## Title Guaranty & Trust Company of Scranton v. The People, for use of Consolidated Adjustment Company.

### Gen. No. 13,694.

OFFICIAL BONDS—*when surety of constable not liable.* A surety upon the official bond of a constable is not liable for the failure of such constable to turn over money unless it appears that such constable received the money in question in his official capacity. *Held,* that the evidence in this case did not show that the constable had so received such money.

Action of debt. Error to the Municipal Court of Chicago; the Hon. MANCHA BRUGGEMEYER, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed March 19, 1908.

STEDMAN & SOELKE and SHAEFFER & SHAEFFER, for plaintiff in error.

JAMES M. GUTHRIE and DELAVAN B. COLE, for defendants in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

This was a suit on the official bond of A. H. Patek, as constable, on which bond plaintiff in error was surety. The suit was against plaintiff in error and A. H. Patek. The summons was served on plaintiff in error, but returned not

found as to Patek. The cause was tried by the court, without a jury, and judgment in the usual form was rendered against plaintiff in error for debt $3,000, damages $125.90.

G. M. Shaever, president of the Consolidated Adjustment Co., testified substantially as follows: The Consolidated Adjustment Company received for collection a claim of Olson & Veerhausen against Ben Linville for the sum of $78, and turned over the same for collection to A. H. Patek, who was a member of the firm of Bernard Loeff & Co., which firm was engaged in making collections. Patek brought suit on the claim and, subsequently, started garnishment proceedings before a justice of the peace.

Joseph A. Linville testified that Patek called on him in April, 1904, and told him that he had a claim against his son, Ben Linville, in favor of Olson & Veerhausen, and again, in May, 1905, called on him and told him that he had obtained judgment against his son and asked him to pay the same. In June, 1905, a judgment was rendered against him, Joseph A. Linville, by a justice of the peace, and Patek then told him that he would send a constable to make a levy unless he would pay the judgment, and July 26, 1905, Joseph Hoof came to his place of business and told him he was a constable, and had an execution against him in favor of Olson & Veerhausen for $106 and costs; that he had been sent there by A. H. Patek, and would have to levy unless he paid, and started to remove his property, with the assistance of three men, whereupon he told him to leave the property where it was, and paid the said Hoof $125.90, and took his receipt for same. The receipt of Joseph Hoof for the $125.90, of date July 26, 1905, is in the record.

It was admitted on the trial that Patek was elected a constable in and for Cook county April 4, 1901, and gave bond in the usual sum, with B. Loeff and M. Quales as sureties, and that, April 3, 1905, when his term of office expired, he was re-elected and gave bond, with the Title Guaranty & Trust Company of Scranton, Pennsylvania, as surety, which is the bond sued on.

The defendant introduced no evidence. The court found for defendant in error, overruled plaintiff in error's motion for a new trial, and rendered judgment as above stated.

Among the objections made by plaintiff in error is that there is no evidence that Patek actually received the money paid by Joseph A. Linville to Joseph Hoof. Counsel for the defendant in error rely on section 1 of article 14, chapter ·79 of the statutes, which is as follows: "Justices of the peace and constables are authorized, and it is hereby made their duty, to receive the money on all notes and demands which may have been placed in their hands for suit or collection, and upon judgment rendered by such justices." Hurd's Statutes of 1905, p. 1290. The argument is that Patek being a constable in July, 1905, when Joseph A. Linville paid the money to Joseph Hoof, Patek, if he received the money, is liable on his official bond and so is plaintiff in error, and that it is a legitimate inference, from the evidence, that he did receive the money from Hoof. It is plain from the language of section 14, that Patek must have received the money as constable, in order to make him and the surety on his official bond liable, and this is impliedly conceded by counsel for defendant in error. It is thoroughly settled by numerous decisions that the liability of a surety is *stricti juris*. In City of Sterling v. Wolf, 163 Ill., 467, the court say: "The rule has been announced by this court in almost numberless cases, that the undertaking of a surety is strictly construed, and may not be extended by implication or construction; that he cannot be held beyond the express terms of his undertaking. The liability is *stricti juris*." Conceding that plaintiff in error would be liable as surety on Patek's official·bond if Patek received the money, it is clearly not liable if he did not receive it. In that case Hoof, if a constable, and the sureties on his official bond might be liable, but not plaintiff in error.

The testimony of Joseph Linville that Patek told him he would send a constable to make a levy, and that Hoof told him Patek had sent him, is mere hearsay as against plaintiff in error. We do not concur in the view that it is a legiti-

mate inference from the evidence that Hoof paid over the money to Patek. There is no evidence even that Hoof was a constable, or that he had an execution, except his own say-so to Joseph A. Linville, which is certainly not evidence as against plaintiff in error. Assuming that Hoof was a constable, held an execution and collected the money, his official duty was to pay the money to the plaintiff in the execution. How, then, can it be presumed that he paid it to Patek?

For the reason that there is no evidence that Patek received the money paid by Joseph A. Linville to Joseph Hoof, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*